UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KARLEIGH J.T.,

                          Plaintiff,

                                                        1:20-CV-1086
v.                                                      (GTS)

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

                          Defendant.

_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                             HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION               KEVIN M. PARRINGTON, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I           LUIS PERE, ESQ.
  Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Karleigh J.T. ("Plaintiff") against the

Acting Commissioner of Social Security Kilolo Kijakazi ("Defendant") pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2)

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 14, 17.)  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for

judgment on the pleadings is granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1997, making her 19 years old at her application filing date and 21 years old at the date of the ALJ's decision.  (T. 10.)[2]  In her application, Plaintiff alleged that she is disabled due to velocardiofacial syndrome and attention-deficit hyperactivity disorder ("ADHD").  (T. 110, 324.)

### B.     Procedural History

Plaintiff received Supplemental Social Security Income based on disability as a child.  (T. 10.)  On March 4, 2016, it was determined that Plaintiff was no longer disabled as a child which resulted in the cessation of benefits.  (Id.)  On June 2, 2016, Plaintiff applied for Supplemental Security Income.  (T. 125.)  This application was initially denied on January 5, 2017, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  (Id.)  Plaintiff appeared at a virtual hearing before ALJ Sharda Singh, on January 14, 2019.  (T. 10, 57-106.)  On April 12, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 10-19.)  On July 13, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following ten findings of fact and conclusions of law.  (T. 10-19.)  First, the ALJ found that Plaintiff attained the age of 18 on December 22, 2015, and was eligible for Supplemental Security Income benefits as a child for

---

[2]      The Administrative Transcript is found at Dkt. No. 11.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

the month preceding the month in which she attained age 18.  Plaintiff was notified that she was found no longer disabled as of March 4, 2016, based on a redetermination of disability under the rules for adults who file new applications.  (T. 12.)  Second, the ALJ found that Plaintiff's mild intellectual disability with intelligence in the low average range and velocardiofacial syndrome were severe impairments.  (T. 12.)  Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); specifically, the ALJ considered Listing 12.05.  (T. 12-14.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels but with nonexertional limitations.  Specifically, claimant is limited with understanding, remembering and carrying out simple routine repetitive non-complex tasks, which are defined as one to two tasks; and she is limited from having frequent contact with supervisors, coworkers and the general public.  In addition, claimant should avoid large crowds of over 100 people.

(T. 14-15.)  Fifth, the ALJ found that Plaintiff had no past relevant work.  (T. 18.)  Sixth, the ALJ found that Plaintiff was born on December 23, 1997, making her a younger individual between the age of 18-49.  (T. 18.)  Seventh, the ALJ found that Plaintiff has a limited education and was able to communicate in English.  (T. 18.)  Eighth, the ALJ found that transferability of job skills is not an issue because Plaintiff does not have past relevant work.  (T. 18.)  Ninth, the ALJ found that Plaintiff was able to perform other work in the national economy as a housekeeper cleaner and garment folder.  (T. 18-19.)  Tenth, the ALJ therefore concluded that Plaintiff was not disabled during the relevant time period.  (T. 19.)

### D.     The Parties' Briefing on Their Motions

#### 1.     Plaintiff's Motion for Judgment on the Pleadings

Generally, in her motion, Plaintiff makes two main arguments.  (Dkt. No. 14 [Pl.'s Mem. of Law].)   First, Plaintiff argues that the ALJ's determination is unsupported by substantial evidence because she failed to properly evaluate whether Plaintiff met or medically equaled Listing 12.05(B).  (*Id.* at 9-14.)  Specifically, Plaintiff argues that the ALJ's findings are unsupported by substantial evidence for the following two reasons: (1) the ALJ misrepresented Plaintiff's ability to perform daily living activities by selectively relying on information and affording too much weight to Plaintiff's ability to dress, bathe, groom, drive, cook, clean, do laundry, and shop, while failing to acknowledge Plaintiff's full capability of performing daily activities;[1] and (2) the ALJ failed to properly consider the findings made by Dr. Tobie Ann Dorn, PsyD ("Dr. Dorn") because she failed to consider Dr. Dorn's findings in the step three analysis. (*Id.* at 10-12.)  Specifically, Plaintiff argues that the ALJ failed to mention Dr. Dorn's opinion— that during her examination of Plaintiff on April 18, 2018, Plaintiff's full-scale IQ score was 69—during step three of the analysis.  (*Id.* at 12.)  Furthermore, Plaintiff argues that her full-scale IQ score was particularly relevant in determining whether she met the requirements set forth in Listing 12.05, and the ALJ provided "no explanation why this test score was omitted from her decision."  (*Id.*)

---

[1]     For example, Plaintiff argues that according to her primary caretaker and appointed representative's hearing testimony (i.e., Jacqueline Haalck), Plaintiff is unable to cook for herself because she cannot follow simple recipes, can only drive to local destinations because she is frequently becomes "confused if there is a detour that she is not familiar with," requires numerous reminders to conduct ordinary chores such as vacuuming and cleaning her bedroom, and is incapable of managing her own finances because she struggles with mathematical calculations.  (Dkt. No. 14, at 11 [Pl.'s Mem. of Law].)

Second, Plaintiff argues that the ALJ failed to properly give the appropriate weight to the opinion of Michelle Friedel ("Ms. Friedel") because, according to Ms. Friedel's opinion questionnaire, Plaintiff had disabling marked limitations.[2]  (*Id.* at 15.)  Specifically, Plaintiff argues that the ALJ's finding that Plaintiff is not disabled indicates that she did not afford any weight to Ms. Friedel's opinion.  (*Id.*)

### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, in her motion, Defendant makes four main arguments.  (Dkt. No. 17 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ's finding that Plaintiff's impairments did not meet or medically equal the criteria for Listing 12.05(B) is supported by substantial evidence.  (*Id.* at 7-10.)  Specifically, Defendant argues that Plaintiff incorrectly interpreted the ALJ's finding because, when viewed as a whole, the ALJ's written decision properly relies upon and cites medical evidence.  (*Id.* at 7-8.)  Furthermore, Defendant argues that the Second Circuit does not require that an ALJ provide detailed explanations as to why a plaintiff does not meet specific Listing requirements.  (*Id.* at 8 [citing *Randy L.B. v. Comm'r of Soc. Sec.*, 18-CV-0358, 2019 WL 2210596, at *5 (N.D.N.Y. May 22, 2009) (Suddaby, C.J.)].)  In any event, Defendant argues that substantial evidence supports the ALJ's findings that Plaintiff only had moderate or mild limitations in the areas of mental functioning, including the following: (1) moderate limitation in understanding, remembering, or applying information; (2) mild limitation in interacting with

---

[2]    The Court notes that, according to Ms. Friedel's opinion questionnaire, Plaintiff had a serious problem with comprehending oral instructions, understanding school and content vocabulary, comprehending mathematics, organizing and formulating oral explanations and descriptions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in daily classroom discussions.  (Dkt. No. 14, at 15 [Pl.'s Mem. of Law].)

others; (3) moderate limitation in concentrating, persisting, or maintaining pace; and (4) moderate limitation in adapting or managing oneself.  (*Id.* at 8-10.)

Second, Defendant argues that the ALJ's finding that Plaintiff only exhibited mild to moderate limitations in the following areas of mental functioning are supported by substantial evidence: (1) moderate limitation in understanding, remembering, or applying information; (2) mild limitation in interacting with others; (3) moderate limitation in concentrating, persisting, or maintaining pace; and (4) moderate limitation in adapting or managing oneself.  (*Id.* at 8-10.) Specifically, Defendant argues that Plaintiff failed to provide the Court with any examples of legal authority supporting her argument that Dr. Dorn's opinion (that, when performing more difficult tasks, such as processing "complex or rapidly presenting information," Plaintiff has a moderate to severe limitation) was sufficient to establish a marked or extreme limitation in understanding, remembering, applying information, or in concentrating, persisting, or maintaining pace.  (*Id.* at 10.)

Third, Defendant argues that whether Plaintiff's full-scale IQ score of 69 meets the requirements of Listing 12.05(B) is immaterial.  (*Id.*)  Fourth, Defendant argues that the ALJ properly considered Ms. Friedel's opinion testimony in finding that Plaintiff's impairments do not render her disabled.  (*Id.* at 11.)  Specifically, by stating that she was affording great weight to the opinions (that Plaintiff was "not significantly limited" in understanding and recalling very short and simple instructions) rendered by psychologists Dr. T. Bruni, Ph.D. ("Dr. Bruni") and Dr. M. Marks, Ph.D. ("Dr. Marks"), Defendant argues that the ALJ adequately explained that she would not rely on Ms. Friedel's opinion because it was inconsistent with the record evidence (i.e., the opinions of Dr. Bruni and Dr. Marks).  (*Id.* at 11.)

## II.      APPLICABLE LEGAL STANDARDS

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

7

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.  Under the cases
> previously discussed, the claimant bears the burden of the proof as
> to the first four steps, while the [Commissioner] must prove the final
> one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   Whether the ALJ's Listing Analysis Is Supported by Substantial Evidence

After carefully considering whether the ALJ's listing analysis is supported by substantial evidence and consistent with applicable legal standards, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 17 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The Court has reviewed all of the evidence in the record and finds that the ALJ's finding regarding Plaintiff's mental functioning is supported by substantial evidence.  "For adults, [the Listing of impairments] describes . . . impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education or work experience."  20 C.F.R. § 416.925(a).  Impairments listed in Appendix I of the regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity.  *Barton v. Astrue*, 08-CV-0810, 2009 WL 5067526, at *6 (N.D.N.Y. Dec. 16, 2009) (Scullin, S.J., adopting Report-Recommendation).

At the third step of the disability evaluation, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, then the claimant is disabled.  *Id.* § 404.1509.  Alternatively, if the impairment does not meet or medically equal the criteria of a Listing, then

the ALJ determines the claimant's RFC and proceeds to the next step of the disability evaluation. *Id.* §§ 404.1520(e)-(f).

The ALJ must explain why a claimant failed to meet or medically equal the Listing criteria "[w]here the claimant's symptoms as described by the medical evidence to match those described in the Listings." *Lord v. Comm'r of Soc. Sec.*, 18-CV-1213, 2020 WL 1428930, at *5 (W.D.N.Y. Mar. 24, 2020) (quoting *Rockwood v. Astrue*, 614 F. Supp.2d 252, 273 [N.D.N.Y. 2009]). The ALJ—not the Commissioner's attorney—is responsible for "build[ing] an accurate and logical bridge from the evidence to [her] conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp.2d 133, 142 (N.D.N.Y. 2012) (D'Agostino, J.). Here, the Court "cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Hamedallah*, 876 F. Supp.2d at 142. "Nevertheless, an ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." *Yeomas v. Colvin*, 13-CV-6276, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (citation, quotation marks, and alterations omitted); *see also Berry*, 675 F.2d at 468-69 (affirming step three decision although the ALJ did not state a specific rationale "since portions of the ALJ's and the evidence . . . indicate[d] that his conclusion was supported by substantial evidence").

In addition to the five-step analysis set forth in 20 C.F.R. § 404.1520, the Commissioner has promulgated additional procedures (that require the application of a "special technique" during both the second and third step of the analysis) which govern the severity of mental impairments. 20 C.F.R. § 404.1520a. Here, the mild and moderate impairments that the ALJ

found and the issues that Plaintiff has raised implicate special procedures in the regulations

concerning mental impairments.  Specifically, "when we evaluate the severity of mental

impairments for adults (persons age 18 and over) and in persons under age 18 when Part A of the

Listing . . . is used, we must follow a special technique at each level in the administrative review

process."  20 C.F.R. § 404.1520a(a).  To do this, the Commissioner must

> [c]onsider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic medical disorders, structured settings, medication, and other treatment.  We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis.  Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able function.

20 C.F.R. § 404.1520a(c).

> If the claimant has any "moderate" or "marked" limitation,

> [w]e will then determine if it meets or is equivalent in severity to a listed mental disorder.  We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.  We will record the presence or absence of the criteria and the rating of the degree of functional limitation.

*Id.* § 404.1520a(d).

In her decision, the ALJ properly considered Listing 12.05 by offering a recitation of the

regulation, applicable law, and relevant facts.  To satisfy Listing 12.05, a claimant must establish

the criteria of either subparagraphs A or B.  20 C.F.R. § 404, Subpart P., App. 1, § 12.05.  Here,

Plaintiff argues that she satisfied Listing 12.05(B).  (Dkt. No. 14, at 10-14 [Pl.'s Mem. of Law].)

For Plaintiff to establish that she satisfied Listing 12.05(B), she must satisfy three elements.  20

C.F.R. § 404, Subpart P., App. 1, § 12.05(B).

11

First, a plaintiff must have a significantly subaverage general intellectual functioning evidenced by the following: (a) a full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or (b) a full-scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence.  *Id.* § 12.05(B)(1).  Here, there is no question that Plaintiff's full-scale IQ score meets the Listing 12.05(B) requirement.  Specifically, on April 18, 2018, Dr. Dorn performed a Wechsler Adult Intelligence Test IV ("WAIS IV") to which Plaintiff attained a full-scale score of 69.[3]  (T. 17, 782.)  Therefore, Plaintiff has satisfied the first element for satisfying Listing 12.05(B).

Second, a plaintiff must establish significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation in two, of the following areas of mental functioning: (a) understand, remember, or apply information; or (b) interact with others; or (c) concentrate, persist or maintain pace; or (d) adapt and manage oneself.  20 C.F.R. § 404, Subpart P., App. 1, § 12.05(B)(3).

Third, a plaintiff must establish that the evidence about his or her current intellectual and adaptive functioning and about the history of the plaintiff's disorder demonstrates or supports the conclusion that the disorder began prior to the plaintiff's attainment of age 22.  *Id.* § 12.05(B)(3).

---

[3]     The Court notes that Plaintiff has had numerous WAIS IV tests conducted to which she has attained full-scale IQ scores that vary.  The Court notes that, in 2015, Plaintiff attained a full-scale IQ score of 74.  However, "[a]lthough there is no definite rule on the issue of how to reconcile multiple IQ results, courts tend to prefer the lowest IQ score across multiple, valid tests."  *Davis v. Astrue*, 06-CV-0657, 2010 WL 2925357, at *5 (N.D.N.Y. July 21, 2010) (Kahn, J.).

"The Court notes that the evaluation of intellectual disorders under [Listing] 12.05 is distinct from the special technique applied to the evaluation of mental disorders generally." *Devane v. Comm'r of Soc. Sec.*, 19-CV-2134, 2020 WL 5743520, at *5 (S.D.N.Y. Sept. 25, 2020) (citing 20 C.F.R. § 404, Subpart P., App. 1, § 12.00[H]).  However, "[t]he second prong of Listing 12.05(B) addresses deficits in adaptive functioning and parallel the ["]special technique["] criteria."  *Lord*, 2020 WL 1428930, at *6.  Regardless of the framework applied, a plaintiff is required to show an extreme limitation in one, or marked limitation in two, of the areas of mental functioning.  Therefore, the Court will consider whether the ALJ's determination that Plaintiff had at most moderate limitations in each of these areas is supported by substantial evidence.

### 1.     The ALJ's Evaluation of Plaintiff's Ability to Perform Daily Activities

Plaintiff argues that the ALJ erroneously arrived at her decision because she misrepresented Plaintiff's ability to perform ordinary day-to-day activities, and selectively relied on certain facts while ignoring others.  (Dkt. No. 14, at 10-14 [Pl.'s Mem. of Law].)  More precisely, Plaintiff argues that the ALJ placed too much emphasis and based the entire Listing 12.05(B) analysis on her "ability to dress, bathe, groom, drive, cook, clean, do laundry, and shop."  (*Id.* at 11.)  On the other hand, Defendant argues that, when taken as a whole, the ALJ's decision is supported by substantial evidence, because it relied upon Plaintiff's testimony to perform ordinary day-to-day activities as well as record medical evidence.  (Dkt. No. 17, at 7 [Def.'s Mem. of Law].)

As it relates to this argument, the Court notes that Plaintiff does not identify a specific area of mental functioning where the ALJ should have found a marked or extreme limitation. With regard to understanding, remembering or applying information, the ALJ determined that

Plaintiff had a moderate limitation.  (T. 14.)  After a review of the record, the Court finds that the ALJ's finding is supported by substantial evidence because Plaintiff's symptoms as described by medical evidence does not match those as required by Listing 12.05(B).

As discussed above in Part II.A. of this Decision and Order, "to determine on appeal whether the ALJ's findings are supported by substantial evidence," the Court "considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.

In making this argument, Plaintiff focuses exclusively on step three of the ALJ's disability analysis, and as a result, erroneously overlooks the ALJ's extensive fact-gathering and weighing of opinions conducted at step four of the disability analysis.  (T. 14-18.)  The ALJ's step four analysis is relevant to assessing her conclusion about Plaintiff's ability to perform ordinary daily activities.  *See Candy A. O. v. Kijakazi*, 20-CV-0766, 2022 WL 226804, at *5 (N.D.N.Y. Jan. 26, 2022) (Peebles, M.J.) ("Even though the ALJ did not specifically discuss pieces of evidence in the paragraph related to Dr. Keever's opinion, Plaintiff ignores the fact the ALJ discussed the objective medical and other evidence in detail throughout the decision and made clear that he considered all of the available evidence."); *Jeanette J. v. Saul*, 19-CV-0795, 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020) (Lovric, M.J.) ("It is proper to read the ALJ's decision as a whole and it would be a needless formality to have the ALJ repeat substantially similar factual analyses"); *Green v. Saul*, 18-CV-2857, 2019 WL 2996502, at *8 (S.D.N.Y. June 19, 2019) (finding any error in the ALJ's perfunctory statement that the physician's opinion was not well supported and inconsistent with other opinions was harmless because it was clear that the "treating physician rule was not traversed when the ALJ's decision is read as a whole in the context of the record before him").

Additionally, Plaintiff's argument that the ALJ misinterpreted evidence to be without merit, because, in reaching her decision, the ALJ relied on the medical opinion of numerous medical professionals, a vocational expert, individuals with personal knowledge of Plaintiff's impairments, Plaintiff's family members, and Plaintiff herself.  (T. 13-19.)  Most particularly, the ALJ relied on the medical opinion of psychologists Dr. David Schaich ("Dr. Schaich") and Dr. Dorn.  (T. 16-17.)

On March 31, 2018, Dr. Schaich conducted an intelligence consultative examination of Plaintiff.  (T. 16.)  On his examination, Dr. Schaich concluded as follows: (1) Plaintiff showed no evidence that she had limitations in her ability to understand, remember, or apply simple and/or complex directions and instructions; (2) Plaintiff showed evidence that she has mild limitations in her ability to use reason and judgment to make work-related decisions; (3) Plaintiff showed no evidence that she had limitations in her ability to adequately interact with her supervisors, co-workers, and the general public; (4) Plaintiff showed evidence that she has mild limitations in her ability to sustain concentration and perform a task at a consistent pace; and (5) Plaintiff showed no evidence that she had limitations in her ability to (a) sustain an ordinary routine and regularly attend work, (b) regulate emotions, control behavior, and maintain well-being, (c) maintain personal hygiene and appropriate attire, and (d) be aware of normal hazards and respond with appropriate precautions.  (T. 16-17, 761-62.)

To help formulate his conclusions, Dr. Schaich relied on the following facts: (1) Plaintiff was a college student pursuing her Associate's Degree and was enrolled in her fourth semester, (2) since 2017, Plaintiff maintained part-time employment (working approximately twelve hours per week) as a school counselor for children; (3) Plaintiff's ability to cook and prepare food, clean and do laundry, drive and utilize public transportation without assistance; (4) Plaintiff's

ability to shop, however, her provided oversight and assistance with managing money; (5)

Plaintiff's hobbies include socializing with friends, bowling, and photography; (6) Plaintiff's

overall relaxed appearance and cooperative demeanor during the examination; and (7)

throughout the examination, Plaintiff's ability to recall and understand instructions, maintain eye

contact, and sustain normal motor behavior.  (T. 16, 761-62.)  As a result, the ALJ afforded some

weight to Dr. Schaich's opinion because it was not entirely consistent with the record, which

showed that Plaintiff had greater limitations than what Dr. Schaich opined to.  (T. 17.)

On April 18, 2018, at the request of Plaintiff's grandmother (to assist in determining

Plaintiff's long-term disability status and eligibility for benefits), Dr. Dorn conducted a

psychological evaluation of Plaintiff.  (T. 17, 780-87.)  On her examination, Dr. Dorn concluded

as follows: (1) Plaintiff demonstrated signs that her cognitive, adaptive, and memory functioning

is consistent with Mild Intellectual Disability; (2) Plaintiff demonstrated academic skills that are

depressed and any efforts to remediate delays in the core subjects have yielded limited success in

preparing Plaintiff for college-level coursework; (3) Plaintiff demonstrated executive function

including cognitive rigidity and slow processing speed that is consistent with a moderate to

severe organic impairment; (4) Plaintiff learns most effectively through structure, repetition, and

experience; and (5) Plaintiff would have the most success in an employment setting that involves

hands-on experience, repetition, and predictability.  (T. 17, 780-87.)

To help formulate her conclusions, Dr. Dorn relied on the following facts: (1) Plaintiff

continued to rely upon her grandparents for social, emotional, and financial support; (2) Plaintiff

did not exhibit problems sleeping or with overall mood; (3) Plaintiff did not use any

psychotropic medications; (4) Plaintiff maintained part-time employment at the local YMCA

where she provided child care to groups of children; (5) Plaintiff acknowledged that she requires

assistance with budgeting money, shopping, cooking, and conducting some ordinary household chores; (6) Plaintiff can independently perform ordinary household chores such as walking the dog and setting table settings; (7) Plaintiff's ability to drive herself to and from school and work (albeit on roads without busy traffic); (8) Plaintiff inability to feel comfortable in large crowds; and (9) Plaintiff's lack of friends, special interests, or exercise routine.  (T. 780-82, 786.)  As a result, the ALJ afforded significant weight to Dr. Dorn's opinion because it was consistent with the record and was supported by relevant clinical findings.  (T. 17.)

Additionally, the ALJ considered the opinion testimony of Plaintiff's grandmother, Jacqueline Haalck, and brother, Craig Rainboth.  (T. 17.)  The ALJ also considered the opinions of the State Agency psychologists and physicians and has afforded them great weight because they are both consistent with the totality of the evidence contained within the record.  (T. 18.)  Finally, the ALJ considered Plaintiff's own statements made about the intensity, persistence, and limiting effects of her symptoms.  (T. 18.)  Specifically, the ALJ considered Plaintiff's hearing testimony that she can maintain part-time employment, drive herself to and from school, dress, bathe, and groom herself, perform simple cooking, and sometimes socializes with friends in public settings.  As a result, the ALJ found that Plaintiff's hearing testimony contained inconsistencies when compared with the opinions of Dr. Dorn, Plaintiff's grandmother, and brother.  (T. 18.)  Acknowledging Plaintiff's severe impairment, the ALJ nonetheless concluded that Plaintiff retained the mental residual functional capacity to understand, remember, and carry out simple tasks, as well as appropriately interact with others and adapt to simple changes in the workplace.  (T. 18.)

After observing Plaintiff's demeanor and listening to her testimony that was elicited through counsel, as well as through her own questioning, the ALJ found that Plaintiff was

capable of understanding, remembering, and carrying simple tasks, and interacting appropriately and being able to adapt to simple changes in a workplace (i.e., aligning with the state consultants' opinions). *See Stevens v. Barnhart*, 473 F. Supp.2d 357, 362 (N.D.N.Y. 2007) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given."). Finally, given all of the facts that were developed through witness testimony and opinion, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms to be inconsistent with other evidence within the record. (T. 18.) Therefore, the ALJ afforded more weight to both Plaintiff's testimony and the state medical consultants than the opinion of Dr. Dorn and Plaintiff's family members.

Finally, as to Plaintiff's argument that the ALJ selectively relied on evidence by choosing only evidence that supported his finding while ignoring other evidence that showed greater limitations, it is well-established that "[a]n ALJ does not have to state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Importantly, while the Court notes that an ALJ must fully develop the record, there is no such requirement that the ALJ need discuss every piece of evidence that is contained within it. *Brault*, 683 F.3d at 448 (citing *Black v. Apfel*, 143 F.3d 383, 386 [8th Cir. 1998]); *see Shari Lee Z. v. Saul*, 19-CV-0268, 2019 WL 6840134, at *4 (N.D.N.Y. Dec. 16, 2019) (Suddaby, C.J.) (noting that "the relevant legal standards do not require the ALJ to discuss all of the evidence, but rather only to show that her decision is supported by substantial evidence"); *Schlichting v. Astrue*, 11 F. Supp.3d 190, 208 (N.D.N.Y. 2012) (Suddaby, J.) ("The ALJ is not required to specifically discuss each piece of evidence considered."). Therefore, even if the ALJ had not incorporated extensive facts and opinions into her written decision, that error would have been deemed harmless because she was under no obligation to do so.

As a result, the Court finds that the ALJ did not misrepresent Plaintiff's ability to perform ordinary daily activities, because it is clear that the ALJ considered Plaintiff's impairment as well as the extent that the impairment prevented her from performing those activities during step four of the disability analysis.

### 2.   The ALJ's Consideration of Dr. Dorn's Opinion

The Court is not persuaded by Plaintiff's argument that the ALJ failed to mention Plaintiff's full-scale IQ score within her step three analysis.  The Second Circuit recognizes the well-settled rule that, "if an ALJ's decision lacks an express rationale for finding that a claimant does not meet a Listing, a Court may still uphold the ALJ's determination if it is supported by substantial evidence." *Rockwood*, 614 F. Supp.2d at 273 (citing *Berry*, 675 F.2d at 468). Although an ALJ is encouraged to provide "a sufficient rationale in support of his [or her] decision to find or not to find a listed impairment," it is not necessarily required to warrant a reviewing court to uphold the disability determination. *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010).

In instances where an ALJ omits express rationale in step three of the disability analysis, a reviewing court is "able to look to other portions of the ALJ's decision . . . [to find] clearly credible evidence in finding that his [or her] determination was supported by substantial evidence." *Berry*, 675 F.2d at 469.  Here, although the ALJ's step three analysis could have been more specific by including Plaintiff's WAIS IV full-scale IQ score recorded by Dr. Dorn, other portions of the ALJ's detailed decision, along with Plaintiff's own testimony, demonstrate that substantial evidence supports step three of the ALJ's disability analysis. *See Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam) (noting that because "the evidence of records permits us to glean the rationale of an ALJ's decision, we do not require that [the ALJ]

have mentioned every item of testimony presented to him [or her] or have explained why he [or she] considered particular evidence unpersuasive or insufficient to lead him [or her] to a conclusion of disability").

In step four of the disability analysis, the ALJ provided reasons for not affording Dr. Dorn's opinions controlling weight.  Although the ALJ considered Dr. Dorn's opined limitations as being consistent with the record and supported by relevant clinical findings, the ALJ further found that the state agency consultants' opinions (of Dr. Bruni and Dr. Marks) were afforded great weight (i.e., more weight than Dr. Dorn's opinion) because they were consistent with the totality of the evidence contained within the record.  (T. 17-18.)  The Court finds this decision to be supported by substantial evidence because "[s]tate agency consultants . . . are highly qualified experts in Social Security disability evaluation." *Dowling v. Comm'r of Soc. Sec.*, 14-CV-0786, 2015 WL 5512408, at *5 (N.D.N.Y. Sept. 15, 2015) (citing 20 C.F.R. §§ 404.1527[e][2][i], 416.927[e][2][i]) (Suddaby, J.).  "Even non[-]examining State agency consultative-source opinion may 'override treating sources' opinions, provided they are supported by evidence in the record.'" *Dowling*, 2015 WL 5512408, at *5 (quoting *Schisler v. Sullivan*, 3 F.3d 563, 568 [2d Cir. 1993]).

Here, the Court finds that the record contains insufficient medical evidence to support Plaintiff's argument that she meets or equals Listing 12.05(B).  Instead, after a review of the record, the Court finds that the ALJ's finding that Plaintiff does not meet or equal Listing 12.05(B) is supported by substantial evidence.  Accordingly, the ALJ was plainly within her discretion to apply more weight to the state agency consultants than that of Dr. Dorn because, "[w]hile the opinions of a treating physician deserve special respect, they need not be given

controlling weight where they are contradicted by other substantial evidence in the record."
*Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

For all of these alternative reasons set forth above in both Parts III.A.1. and III.A.2. of
this Decision and Order, the Court finds that Plaintiff has failed to meet her burden to show that
the ALJ's determination that Plaintiff did not meet or medically equal to Listing 12.05(B) was
not supported by substantial evidence.

**B.     Whether the ALJ Properly Considered Michelle Friedel's Opinion**

After carefully considering whether the ALJ properly considered Michelle Friedel's
opinion questionnaire, the Court answers this question in the affirmative for the reasons stated in
Defendant's memorandum of law.  (Dkt. No. 17 [Def.'s Mem. of Law].)  To those reasons, the
Court adds the following analysis.

Plaintiff argues that the ALJ failed to properly weigh Ms. Friedel's opinion questionnaire.
(Dkt. No. 14, at 14-16 [Pl.'s Mem. of Law].)  Plaintiff correctly highlights that, "[w]hile the
opinions of educators [such as Ms. Friedel] and other non-medical sources are not entitled to
controlling weight under the regulations, they are, nevertheless, deemed valuable sources of
evidence in assessing impairment severity and functioning and should be considered by the
ALJ." *Kaliegh O. on behalf of S.S.T. v. Berryhill*, 17-CV-0960, 2018 WL 4054098, at *3
(N.D.N.Y. Aug. 24, 2018) (citing *Reid v. Astrue*, 07-CV-0577, 2010 WL 2594611, at *5 n.4
[N.D.N.Y. June 23, 2010]).  "Opinions offered by teachers 'should be evaluated by using the [20
C.F.R. § 416.927] factors,' although 'not every factor . . . will apply in every case.'"  *Crouch v.
Astrue*, 11-CV-0820, 2012 WL 6948676, at *3 (N.D.N.Y. Dec. 31, 2012) (quoting SSR 06-03p,
2006 WL 2329939, at *5 [Aug. 9, 2006]), *report-recommendation and adopted by* 2012 WL
316547 (N.D.N.Y. Jan. 28, 2012).  Specifically, these factors include "length of the relationship;

consistency with other record evidence; extent of supporting evidence; cogency of the source's explanation; and expertise of the source." *Bonet ex rel. T.B. v. Astrue*, 11-CV-1140, 2012 WL 3544830, at *7 (N.D.N.Y. Aug. 16, 2012) (citing SSR 06-03p, 2006 WL 2329939, at *4-5).

Plaintiff argues that there is no evidence that, in making the disability determination, the ALJ explained the degree of weight she gave to Ms. Friedel's opinion questionnaire, nor did the ALJ "ensure that the discussion of the evidence in the determination or decision" allow Plaintiff or any reviewing court to understand her reasoning, "when such opinions may have an affect on the outcome of the case." (Dkt. No. 14, at 14-15 [Pl.'s Mem. of Law].)

Conversely, Defendant argues that the ALJ sufficiently discussed the evidence in a manner that is comprehensible by Plaintiff or any reviewing court, because the ALJ explained how she relied on the opinions of Dr. Bruni and Dr. Marks. (Dkt. No. 17, at 11 [Def.'s Mem. of Law].)

In step four of the disability analysis, the ALJ noted that Plaintiff's early childhood teacher, Ms. Friedel, opined that Plaintiff "had serious to very serious problems in almost all activities in the domain of Acquiring and Using Information." (T. 16, 616.) The ALJ also included Ms. Friedel's opinion that Plaintiff "worked extremely hard but learning new material was extremely difficult," "needed prompting and clarification when material was presented [to her]," any of Plaintiff's success in school was due to "the individual support at home and the academic support [she received] at the high school," and Plaintiff "needed extended time to process information." (T. 16, 616-17.) According to Plaintiff, Ms. Friedel's opinion constitutes a marked limitation in two overall domains—acquiring and using information, as well as, attending and completing tasks—thereby rendering Plaintiff disabled. (Dkt. No. 14, at 15.) The Court respectfully disagrees.

Even accepting Plaintiff's argument, it is not clear that Ms. Friedel's opinion supports a marked limitation in the overall domain of attending and completing tasks.  As Ms. Friedel indicated in her questionnaire, she opined that there were very serious problems in one of the subareas, an obvious problem in five of the subareas, a slight problem in three of the subareas, and no problem in four of the subareas.  (T. 617.)  In fact, Ms. Friedel opined that there were slight or no problems in Plaintiff's abilities related to more than half of the listed subareas for this domain.  Although Plaintiff might interpret this opinion as indicating an overall marked limitation in the domain, the Court cannot say that the ALJ's interpretation of this as an overall less-than-marked limitation was unreasonable under the circumstances.  Importantly, it is not the Court's role to reassess the findings made by the ALJ based on its own interpretation of the evidence, but rather to determine whether the ALJ's findings are supported by substantial evidence.  *See Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) ("[T]he court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review"); *Bush v. Comm'r of Soc. Sec.*, 16-CV-1007, 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (Suddaby, C.J.) ("[W]here the evidence is subject to more than one reasonable interpretation, this Court is bound to uphold the ALJ's interpretation.") (collecting cases); *Eddie Alberto Lugo Cortes v. Comm'r of Soc. Sec.*, 16-CV-1012, 2017 WL 3524674, at *8 (N.D.N.Y. Aug. 15, 2017) (Hummel, M.J.) (finding that the ALJ's interpretation of the consultative examiner's opinion was not unreasonable in light of all of the evidence). Contrary to Plaintiff's argument, there was nothing for the ALJ to explain or reconcile, because it appears that the ALJ reasonably interpreted Ms. Friedel's opinion as indicating a less-than-marked overall limitation in the domain of attending and completing tasks.

Finally, the Court, having reviewed the record in its entirety, does not find that any other aspect of the ALJ's decision would require remand.  Those findings are supported by substantial evidence and consistent with applicable law, and Plaintiff has not identified any reason why they should not be affirmed.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: February 23, 2022
       Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge